**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| BRIAN W. GEIKE<br><br>               Plaintiff,<br><br>    v.<br><br>BNSF RAILWAY COMPANY,<br>A Delaware Corporation,<br>               Defendant. | **Case No. CV-23-72-GF-BMM**<br><br><br>**ORDER** |

## INTRODUCTION

Plaintiff Brian W. Geike ("Geike") brought this case under the Federal Employers' Liability Act, 45 U.S.C. § 51, et seq., ("FELA") after Geike was allegedly injured on February 5, 2021, while working as a railroad engineer for Defendant BNSF Railway Company ("BNSF"). (Doc. 1). BNSF has requested a Rule 35(a) independent medical examination ("IME") of Geike to evaluate his alleged permanent disability. (*Id* at 2.) Geike does not oppose the IME request but opposes BNSF's choice of the examining physician. (Doc. 21.)

## FACTUAL BACKGROUND

Geike allegedly sustained injuries to his neck, back, shoulder, and knee and "is reasonably certain to require additional medical treatment in the future." (*Id*. at 4-5.), Geike underwent spine surgery after the injury by Dr. John VanGilder ("VanGilder"), and knee surgery by Dr. Andrew Blackman. (Doc. 21 at 5.) Dr.

VanGilder last saw Geike for his back injuries on December 8, 2022. (Doc. 19 at 2.) Dr. VanGilder deferred opining on Geike's capacity to work and cited the need for a Functional Capacity Exam ("FCE") to be completed. (*Id.*)

Dr. Dean Orvis ("Orvis") conducted an FCE and concluded that Geike could not return to his job as a BNSF conductor/engineer. (Doc. 21 at 4.) Dr. Blackman approved Geike returning to work from his knee injury on February 15, 2023. (*Id.*) Geike disclosed two additional experts, Margo Luckman ("Luckman") and Chadley Runyan ("Runyan"), at the expert disclosure deadline. (*Id.*) BNSF seeks to have Dr. Joseph Erpelding ("Erpelding") perform an independent medical exam of Geike as a rebuttal to Geike's two experts.

Dr. Erpelding previously has been retained by BNSF to review the claims and other medical opinions made about Geike. (Doc. 21 at 2.) Dr. Erpelding concluded from this information that Geike was not injured when he fell backward. Dr. Erpelding elected not to conduct his own physical examination of Geike as part of his initial expert disclosure and his review of the medical records provided by Geike. (*Id.*)

## LEGAL STANDARD

Fed. R. Civ. P. 35(a) permits a court to order a party who places their mental or physical condition in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner, as well as the authority to specify the

time, place, manner, conditions, scope, and identity of the examiner. *Daum v. Allstate Fire and Casualty Ins. Co*., 2014 WL 12600126, *2 (D. Mont. Oct. 28, 2014). The party requesting the examination has the burden to establish that "(1) the medical condition as to which the examination is sought is really and genuinely in controversy; and (2) that good cause exists for ordering each particular examination." *Id*. (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964)).

## DISCUSSION

It is undisputed that Geike's physical condition is at issue in this case. A Rule 35 physical examination proves appropriate. The only matter in dispute is who should perform the exam and whether the request is timely. Geike has agreed to waive his argument to the timeliness of the IME request and undergo an examination. (Doc. 21 at 2.)

Luckman is a vocational expert who contacted Dr. VanGilder to inquire about Dr. VanGilder's treatment of Geike. (Docs. 19-1, 19-2.) Luckman contacted Dr. VanGilder once in 2022, and again in 2023 to inquire about Geike's treatment and employability. (*Id*.)   Dr. VanGilder concluded, apparently for the first time in response to Luckman's survey, that Geike's injuries prevent him returning to work as an engineer. (Doc. 19-3 at 5.) Geike's counsel did not disclose the survey and

letters sent by Luckman to Dr. VanGilder until the expert disclosure deadline on November 15, 2024.

Geike objects to an examination by Dr. Erpelding. Geike contends that Dr. Erpelding already has opined on Geike's medical condition based on his review of Geike's medical records. Dr. Erpelding determined in his report that Geike had not been injured and Dr. Erpelding elected not to conduct his own physical exam of Geike. (Doc. 21 at 6.) Geike also contends that Geike would endure hardship by having to travel more than 400 miles to be examined by Dr. Erpelding in Billings Montana. (*Id*. at 9.) Gieke notes that at least 26 orthopedic medical providers practice in the Great Falls, Montana area. (*Id*.)

Geike argues that the Court's reasoning in *Moffitt*, should apply. (*Id*. at 8.) The Court ordered an IME of the plaintiff in *Moffit* after medical providers entered a new treatment plan regarding her accident-related injuries. *Moffitt v. Wawanesa Ins. Co, et al*., No: 4:14-cv-00033-BMM, (D. Mont. Dec 18,2014). The defendants in *Moffit* sought to have a retained expert who had performed a "paper review" of the plaintiff's medical condition perform the IME. The circumstances from *Moffitt* differ.

The defendants in *Moffitt* retained an expert. The retained expert performed a paper review of the plaintiff's medical records like the one conducted by Dr. Erpelding in this case. *Moffit* (Doc. 13 at 4.) The scope of the paper review included

4

those records disclosed by the plaintiffs up to the simultaneous expert disclosure deadline. (Id.) The retained expert in *Moffitt* opted to rely on a paper review of the plaintiff's medical records for the rebuttal expert report. (Id.) The Court required the IME but declined to allow the defendant's retained expert to conduct the IME. (Doc. 17 at 3.) The Court recognized the attempt by the defendant to avoid the costs of an IME until after defendants had received and reviewed the plaintiff's initial and rebuttal expert reports. (*Id.*)

BNSF seeks to have Dr. Erpelding conduct an IME after having conducted a similar paper review of Geike's medication condition. BNSF seeks to rebut conclusions by Geike's expert, disclosed for the first time in the initial expert report, that Geike remains physically unable to return to work. Geike's report relies upon previously undisclosed opinions from Dr. VanGilder. (Doc. 27 at 3.) The Court's scheduling order contemplated that each side simultaneously would disclose their experts and accompanying expert reports. (Doc. 10.) Geike and BNSF now will have the opportunity to file rebuttal expert reports with access to the same information and opinions as the other side. (Id.)

Finally, Geike does not allege that Dr. Erpelding lacks the knowledge or training to conduct the IME. Dr. Erpelding's training and experience reflect his ability to opine on Geike's physical conditions and any injuries suffered in this

incident. Geike instead objects to the fact that BNSF has retained Dr. Erpelding as its expert witness. (Doc. 21 at 8.)

"Generally . . . courts have rejected efforts by plaintiffs to disqualify a physician based upon allegations of bias when those allegations are based on the fact that the physician generally is retained by the defense side of a lawsuit." *Pham v. Wal-Mart Stores, Inc.*, No. 2:11-cv-01148-KJD-GWF, 2012 WL 1957987, 2012 U.S. Dist. LEXIS 73636 at *11 (D. Nev. May 29, 2012) (citations omitted). The Court agrees and will not disqualify Dr. Erpelding based solely on the fact that BNSF has retained him as an expert witness. The IME will allow Dr. Erpelding to issue a rebuttal expert report based on the same information possessed by Geike's expert witnesses.

Geike retains the right to cross-examine and impeach Dr. Erpelding regarding any perceived bias or unsupported presumptions in reaching his opinions. Geike appears to have ample ammunition in this regard as evidenced by its citation to Dr. Erpelding's previous work for Defendant. (Doc. 27 at 5. citing *Agan v. BNSF Railway Co.*, No. CV-19-83-BLG-SPW (D. Mont.); *Zrowka v. BNSF Railway Co.*, No. CV-21-61-BMM (D. Mont.); *Kremers v. BNSF Railway Co.*, No. CV-21-29-SPW-TJC (D. Mont.); *Emhoff v. BNSF Railway Co.*, No. CV-22-04-BMM-JTJ (D. Mont.); *Otten v. BNSF Railway Co.*, No. 20CV00103-R (D. Wyo); *Weber v. BNSF*

*Railway Co.*, No. DV-17-2688 (Mont. 13th Jud. Dist. Ct.); *Kakalecik v. BNSF Railway Co.*, No. BDV-16-0009 (Mont. 8th Jud. Dist. Ct.).)

## ORDER

Accordingly, **IT IS ORDERED**

1. BNSF's Motion for a Rule 35 Physical Examination by its retained expert Dr. Erpelding (Doc. 18.) is **GRANTED**.

2. The parties shall meet and confer and attempt to agree upon a date and time for the examination. BNSF shall be responsible for all costs associate with the examination, including Geike's reasonable travel-related costs. If no such agreement can be reached the parties shall present the Court with a list of proposed dates no later than February 28, 2025.

3. The Court will consider proposed amendments to its scheduling order, including rebuttal expert disclosure deadlines, as needed to accommodate the examination.

**DATED** this 18th day of February, 2025.

_____
Brian Morris, Chief District Judge
United States District Court